1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

11

12  WANDA ROSA RUIZ,                 )     Case No. CV 14-08867-AS
                                     )
13              Plaintiff,           )     **MEMORANDUM OPINION AND**
                                     )
14      v.                           )     **ORDER OF REMAND**
                                     )
15  CAROLYN W. COLVIN, Acting        )
    Commissioner of Social          )
16  Security,                        )
                                     )
17              Defendant.           )
    ─────────────────────────────── )
18

19       Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED
20  that  this  matter  is  remanded  for  further  administrative  action
21  consistent with this Opinion.

22

23                          **PROCEEDINGS**

24

25       On November 21, 2014, Plaintiff filed a Complaint seeking review of
    the partial denial of her applications for Disability Insurance Benefits
26  and Supplemental Security Income.  (Docket Entry No. 3).  The parties
27  have  consented  to  proceed  before  the  undersigned  United  States
28  Magistrate Judge.  (Docket Entry Nos. 10, 16).  On April 15, 2015,
    Defendant filed an Answer along with the Administrative Record ("AR").

(Docket Entry Nos. 11-12).  The parties filed a Joint Position Statement ("Joint Stip.") on September 1, 2015, setting forth their respective positions regarding Plaintiff's claims.  (Docket Entry No. 18).

The Court has taken this matter under submission without oral argument.  <u>See</u> C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed November 14, 2014 (Docket Entry No. 7).

### BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On February 25, 2011, Plaintiff, formerly employed as a medical records clerk at a medical clinic and as a hospital cleaner (<u>see</u> AR 55-56, 129, 264), filed applications for Disability Insurance Benefits and for Supplemental Security Income, alleging a disability since May 15, 2009. (<u>See</u> AR 230-40).  On January 5, 2012, the Administrative Law Judge, Alexander Weir III ("ALJ"), heard testimony from Plaintiff and vocational expert Sandra Trost.  (<u>See</u> AR 52-74).  On March 2, 2012, the ALJ issued a decision denying Plaintiff's applications.  (<u>See</u> AR 120-30).  After determining that Plaintiff had severe impairments -- carpal tunnel syndrome with surgical release, left and right wrists (<u>see</u> AR 123-27)[1] -- the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform sedentary work[3] with the following limitations: can lift and carry 10 pounds occasionally and small objects frequently; can stand, walk and sit for 6 hours in an 8-hour workday,

---

[1]    The ALJ found that Plaintiff's mental depression and anxiety were not severe impairments.

[2]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  <u>See</u> 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

with normal breaks; can push and pull without significant limitation; limited in handling and fingering with both hands and can perform fine and gross motor activities frequently (but not constantly or repetitively); and no forceful gripping and grasping. (See AR 127-28). After finding that Plaintiff was not able to perform her past relevant work as a medical records clerk and as a hospital cleaner (see AR 128-29), the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. (See AR 129-30).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 185). On June 14, 2013, the Appeals Council vacated the ALJ's 2012 Decision and remanded the case to the ALJ to do the following: "Obtain updated evidence concerning the claimant's carpal tunnel syndrome (CTS) with surgical release in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913)."; "Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529 and 416.929) and Social Security Ruling 96-7p."; "Give further consideration to the claimant's maximum residual functional capacity throughout the period at issue and provide appropriate rational with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p)."; and "Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 85-15)." (See AR 136-37).

///
///
///

On November 19, 2013, the ALJ heard testimony from Plaintiff, medical expert A. Genest, and vocational expert Heidi Paul. (See AR 77-113).   On February 21, 2014, the ALJ issued a decision granting Plaintiff's applications in part and denying Plaintiff's applications in part. (See AR 28-40).   After determining that Plaintiff had a severe impairment (carpal tunnel syndrome) from May 15, 2009 (the onset date of disability) through April 24, 2012 -- (see AR 33-34), the ALJ found that Plaintiff's impairment met Listing of Impairments 11.14 (see AR 34-35), and therefore found that Plaintiff was disabled from May 15, 2009 through April 24, 2012. (See AR 35).   However, after determining that Plaintiff did not suffer any new severe impairment after April 24, 2012, there was medical improvement beginning April 25, 2012, and as of April 25, 2012, Plaintiff's impairment no longer met or equaled a Listing (see AR 35-37), the ALJ found that, beginning April 25, 2012, Plaintiff had the RFC to perform light work[4] with the following limitations: can lift and carry up to 20 pounds occasionally and 10 pounds frequently; can stand and walk for 2 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; needs to be able to alternate sitting and standing as needed; can perform postural activities (bending, stooping, crouching, crawling and kneeling) occasionally; can push and pull frequently with her left arm and hand and occasionally with her right arm and hand; can reach and lift overhead occasionally; and can perform fine and gross motor activity (fingering and handling) with her right hand frequently. (See AR 37-38).   After finding that Plaintiff was not able to perform her past relevant work since April 25, 2012 (see AR 38), the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, and therefore found that Plaintiff was not disabled since April 25, 2012. (See AR 39-40).

---

[4]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."   20 C.F.R. §§ 404.1567(b), 416.967(b).

1  Plaintiff requested that the Appeals Council review the ALJ's
2  decision. (AR 20). The request was denied on September 8, 2014. (AR
3  1-5). The ALJ's decision then became the final decision of the
4  Commissioner, allowing this Court to review the decision. See 42 U.S.C.
   §§ 405(g), 1383(c).
5
6
7                        **PLAINTIFF'S CONTENTIONS**

8   Plaintiff alleges that the ALJ erred in: (1) determining that
9  Plaintiff experienced medical improvement as of April 25, 2012; (2)
10 assessing Plaintiff's RFC; (3) assessing Plaintiff's credibility; and
11 (4) failing to identify and reconcile discrepancies between the
12 vocational expert's testimony and the Selected Characteristics of
13 Occupations. (See Joint Stip. at 10-15, 22-24, 27-32, 40-44, 48-49).

14                             **DISCUSSION**
15
16  After consideration of the record as a whole, the Court finds that
17 Plaintiff's third claim of error warrants a remand for further
18 consideration. Since the Court is remanding the matter based on
19 Plaintiff's third claim of error, the Court will not address Plaintiff's
   first, second and fourth claims of error.
20
21 **A.   The ALJ Failed to Properly Assess Plaintiff's Credibility**
22
23  Plaintiff asserts that the ALJ failed to provide clear and
24 convincing reasons for finding Plaintiff not credible. (See Joint Stip.
   at 10, 28-32, 40-41). Defendant asserts that the ALJ properly found
25 Plaintiff not credible. (See Joint Stip. at 32-39).
26 ///
27 ///
28 ///

At the November 19, 2013 hearing, Plaintiff testified as follows:

She lives with her 16 year-old son. She worked for a long time as a clerk at a medical clinic. She could not do that job because her hands fell asleep and suffered shooting pains. After she left that job, she filed a worker's compensation case (which settled). (See AR 100, 104).

Her hands are her major issue, the reason she stopped working. She had left carpal tunnel surgery in 2010 and right carpal tunnel surgery in 2011. (See AR 95, 98).

Her left hand/wrist has gotten worse since the surgery. She experiences unbearable pain (an average pain level of 9 1/2) which travels through her elbow, shoulder and fingers. She cannot hold onto things for long. She was given a new brace for her left hand a couple of months before. (See AR 95-97).

Her right hand has gotten worse since the surgery (and worse since the last hearing) because she uses it all the time. She has a shooting pain and a triggering thumb, and the same symptoms as her left hand. The pain level is 8 1/2, but is increasing. She cannot hold things. (See AR 97-98).

She has right knee pain (at a level of about 6) which "comes and goes", but she has not received much treatment on her right knee. (See AR 98-99).

She has difficulty sleeping, because the pain in her hands increases when she is more relaxed. She sleeps about four hours a night. (See AR 99).

She takes Tramadol for her pain, but it makes her drowsy. (<u>See</u> AR 99).

She cannot lift any weight with her left hand. She can lift about 5 or 6 pounds with her right hand. She is not able to type or use a pen or pencil because of numbness and lack of strength in her fingers. She can grasp a door handle and open a door if she does it quickly. She can sit in a chair about 1 hour because of her pain, frustration, medication, fidgeting, nervousness and depression (she needs to move around). (<u>See</u> AR 101-03).

She has a home computer, but she rarely uses it (no more than 20 to 30 minutes a day). She has a driver's licence, but she does not drive much (only to the local market). Her 18 year-old son, who is in college and does not live at home, drives her around. She can do house chores (i.e., cooking and cleaning) on a limited basis. Her sister sometimes helps her with her house chores. (<u>See</u> AR 103-05).[5]

The ALJ briefly discussed Plaintiff's testimony in a section of the 2014 Decision that did not address Plaintiff's credibility. (<u>See</u> AR 34, stating, "At the hearing, the claimant testified that the surgeries did not improve her carpal tunnel conditions."). The ALJ addressed Plaintiff's credibility as follows:

There are specific and legitimate reasons for rejecting the claimant's excess symptom testimony based on the objective medical evidence, the functional assessments of treating

---

[5]    The Court notes that Plaintiff completed a Function Report - Adult dated March 21, 2011. (<u>See</u> AR 280-87).

7

physicians, the testimony of the medical witness and her lack of credibility.

Medical records from psychiatric examiner, Mryon L. Nathan, MD dated November 6, 2009, indicated that the claimant was terminated from her employment due to sexually harassing a male co-worker, and not due to any medical/mental impairment (Exhibit 40F/8).

The claimant admitted to Dr. Jose in October 2013, that she received a Court judgment in 2011 indicating "that she can work but mainly to watch monitors. For the past two years she has been working 6 hours a week, mainly on weekends - 4 hours on saturdays and 2 hours on Sundays - watching an elderly dying man" (sic) (Exhibit 26F/4). This creates the inference that the claimant retained the residual functional capacity to perform work related tasks. Moreover, her receipt of employment benefits during 2011 and 2012 (Exhibit 7D) creates the inference that the claimant believed she was ready, willing and able to accept gainful employment.

The claimant takes nothing stronger than Ibuprofen for pain (Exhibit 35F). There is no evidence of ongoing physical therapy, occupational therapy, or other rehabilitative therapy.

I observed the claimant to sit throughout the proceedings in no apparent discomfort. She followed the proceedings closely and fully without any noted distractions or overt pain behavior. The claimant responded to questions in an appropriate and logical manner. There was nothing unusual or bizarre about the claimant's mannerisms or dress.

As for the opinion evidence, no weight is afforded to the opinion from Clara Chung in Exhibit 45F, because she is not a qualified medical source.  Furthermore, the medical expert testified that her opinion is inconsistent with the medical records, as a whole.  The claimant's treating source and the medical expert testified that the claimant is capable of lifting up to ten pounds continuously and can perform fine and gross manual manipulations on an occasional basis.

(AR 38).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).  Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear and convincing reasons for doing so.  Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen v. Chater, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Here, the ALJ failed to provide clear and convincing reasons for his finding that Plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms was not fully credible.

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'"

9

Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen v. Chater, supra, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, to the extent that the ALJ discounted Plaintiff's credibility based on notations in the November 6, 2009 report by the psychiatric examiner about the reason for her May 15, 2009 termination from employment at Cedars-Sinai Health Systems (namely, termination from her employment due to sexual harassment), see AR 38, that reason was not clear and convincing. Contrary to the ALJ's assertion, the psychiatric examiner did not state Plaintiff was terminated from her employment due to sexual harassment; rather, the psychiatric examiner stated Plaintiff was terminated from her employment due to an accusation of sexual harassment. (See AR 1503). Moreover, although inconsistencies between a claimant's testimony and conduct might serve as a consideration in a credibility determination, see Light v. Social Security Admin., supra, Plaintiff's termination was not necessarily inconsistent with her testimony at the November 19, 2013 hearing that she could no longer do her job because of pain and numbness in her hands. Moreover, at the January 5, 2012 and November 19, 2013 hearings, the ALJ did not ask Plaintiff any questions about her termination from employment.

Third, the ALJ's discrediting of Plaintiff's testimony based on statements in the report of the October 11, 2013 neurological examination conducted by Cleotilde S. Jose, M.D. (see AR 1282 ["In 2011, she was given a judgment by the Court that she can work but mainly to watch monitors. For the past two years she has been working 6 hours a week, mainly on weekends - 4 hours on [S]aturdays and 2 hours on Sundays - watching an elderly dying man."]) was improper. Contrary to the ALJ's assertion, Plaintiff's ability to work 6 hours a week (apparently in 2011 and 2011) did not create the inference she had the RFC to perform

work-related tasks after April 24, 2012 (the beginning of the period presently at issue). Moreover, there is no indication in the record (and the ALJ did not ask Plaintiff at the hearings) about the nature of the tasks performed for the elderly man during that two-year period.

Fourth, the ALJ improperly found that Plaintiff's receipt of employment benefits during 2011 and 2012 "create[d] the inference that [Plaintiff] believed she was ready, willing and able to accept gainful employment" (AR 38). The report on which the ALJ relies reflects that Plaintiff received unemployment benefits in the second quarter of 2011 through the fourth quarter of 2012. (See AR 256-57).

"[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime[.]" Carmickle v. Commissioner, 533 F.3d 1155, 1161-62 (9th Cir. 2008). There is no indication in the record whether Plaintiff was holding herself out as ready, willing and able to do full-time or part-time work. (See AR 63-64, 66 [Plaintiff testified at the January 5, 2012 hearing that she was collecting unemployment, and that she was applying for work but that "they will not take [her] with the restrictions."]). Therefore, Plaintiff's receipt of unemployment benefits was not a proper basis for finding her not credible. See Carmickle, supra, 533 F.3d at 1162 ("[T]he record here does not establish whether Carmickle held himself out as available for full-time or part-time work. Only the former is inconsistent with his disability allegations. Thus, such basis for the ALJ's credibility finding is not supported by substantial evidence.").

Fifth, the ALJ's discrediting of Plaintiff's testimony because Plaintiff "takes nothing stronger than Ibuprofen for pain" and "[t]here is no evidence of ongoing physical therapy, occupational therapy, or other rehabilitative therapy" was improper. Evidence of conservative treatment may be considered in a credibility determination, Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of

'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment[.]"). However, there is some evidence in the record that Plaintiff's treatment was not so conservative, i.e., Plaintiff's testimony she took Tramadol for pain (see AR 99 [Plaintiff's testimony at the November 19, 2013 hearing]; AR 295 [the statement in the Disability Report - Appeal submitted on June 29, 2011 that Daniel Capan, M.D. of Downey Orthopedic Medical Group prescribed Capsaicin/Tramadol]), notations in medical records that Plaintiff received (or was recommended to receive) physical therapy after June 2011 (see AR 821-23) and in October 2013 (see AR 1308), a notation in a medical record that in September 2013 (following an X-ray of Plaintiff's wrist) Plaintiff was referred to an orthopedist "for surgical options" (see AR 1309), and an indication that Plaintiff received physical therapy services prior to October 2013 (see AR 1615). Moreover, at the November 19, 2013 hearing, the ALJ did not ask Plaintiff about the lack of medical records reflecting a Tramadol prescription. Moreover, at the January 5, 2012 and November 19, 2013 hearings, the ALJ did not ask Plaintiff about physical therapy services in 2011 through 2013.

Sixth, the ALJ's discrediting of Plaintiff's testimony because he "observed the claimant to sit throughout the proceedings in no apparent discomfort" and "without any noted distractions or overt pain behavior" (AR 38) was improper. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989) ("That a claimant does not exhibit manifestations of pain at the hearing before the ALJ is, standing alone, insufficient to rebut a claim of pain."); Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) (condemning an ALJ's reliance of a plaintiff at a hearing as "'sit and squirm' jurisprudence"). At the November 19, 2013 hearing, Plaintiff testified she could sit in a chair for about an hour. (AR 102-03). Since it appears that the November 19, 2013 hearing lasted for approximately 40 minutes (see AR 77, 113), the ALJ's reliance on his observation of Plaintiff at the hearing was not a sufficient basis for

discrediting her testimony.

Seventh, although the ALJ also found that there was a lack of objective medical evidence supporting Plaintiff's testimony concerning her symptoms and limitations, the lack of supporting objective medical evidence cannot, by itself, support an adverse credibility finding.  <u>See Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998).

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  <u>Id.</u> at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman v. Apfel</u>, <u>supra</u>, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate.  Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects.  <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir.

2014)(citations omitted).[6]

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 5, 2016

_____
                    /s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[6]    The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claims regarding the ALJ's error in determining that Plaintiff experienced medical improvement as of April 25, 2012 (see Joint Stip. at 10-15), the ALJ's error in assessing Plaintiff's RFC (see Joint Stip. at 10, 22-24) and the ALJ's error in failing to identify and reconcile discrepancies between the vocational expert's testimony and the Selected Characteristics of Occupations (see Joint Stip. at 10, 41-44, 48-49). Because this matter is being remanded for further consideration, these issues should also be considered on remand.